UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBERS BRT3A001920-00 AND BRT3A000687-00,** § § § § § § § Plaintiff, § § v. § § **KEYSTONE DEVELOPMENT, LLC** § **and CITYSCAPE PLAZA OWNERS** § **ASSOCIATION, INC.,** § § Defendants. § | Civil Action No. **3:21-CV-336-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Summary Judgment under Federal Rule of Civil Procedure 56 (Doc. 18), filed July 16, 2021 ("Underwriter's Motion for Summary Judgment"); and Defendant Cityscape Plaza Owners Association, Inc.'s Motion for Leave to File Sur-Reply in response to Underwriter's Motion for Summary Judgment (Doc. 29), filed August 13, 2021 ("Cityscape's Motion for Leave"). Having considered the motions, response, reply, pleadings, proposed surreply and exhibits thereto, summary judgment evidence, and applicable law, the court, for the reasons that follow, **denies** Underwriter's Motion for Summary Judgment as to its claim for a declaratory judgment regarding its duty to defend and **dismisses without prejudice** Underwriter's claim for a declaratory judgment regarding its duty to indemnify; and **denies** Cityscape's Motion for Leave.

## I. Factual and Procedural Background

On February 16, 2021, Plaintiff Certain Underwriters at Lloyd's, London Subscribing to Policy Numbers BRT3A001920-00 and BRT3C000687-00 ("Plaintiff" or "Underwriter") initiated this civil action, based on diversity jurisdiction, seeking a declaratory judgment that it does not have a duty to defend and indemnify Defendant Keystone Development, LLC ("Keystone"), its insured, stemming from a construction project built by Keystone known as Cityscape Plaza. Pl.'s Complaint (Doc. 1). Defendant Cityscape Plaza Owners Association, Inc. ("Cityscape") manages and/or maintains Cityscape Plaza. Cityscape's Second Am. Pet. ¶ 26. Thereafter on February 26, 2021, Cityscape commenced an action in the 134th Judicial District Court, Dallas County, Texas against Keystone, among others, seeking monetary damages because of construction defects and the physical damage to Cityscape Plaza, including recovering the costs to repair or replace the physical damage (the "Underlying State Court Lawsuit"). Cityscape's Org. Pet. ¶ 29.

On July 16, 2021, Plaintiff filed a motion for summary judgment under Federal Rule of Civil Procedure 56. *See* Docs. 18, 19. Defendants Keystone and Cityscape responded. *See* Docs. 21, 24, 25, and 26. Plaintiff then filed a reply, Doc. 29, that Cityscape alleges contains a new argument—"collusive fraud"—as a basis for considering extrinsic evidence in support of granting Plaintiff's motion for summary judgment. As a result, Cityscape now seeks leave to file a surreply to address the argument.

Cityscape filed its First Amended Original Petition in the Underlying State Court Lawsuit on July 26, 2021, and filed its Second Amended Petition—the current live pleading—on November 16, 2021.

## II.     Motion for Leave

Once a motion is filed, the Local Civil Rules permit a response by the nonmovant and a reply by the movant. *See* Local Civil Rule 7.1. Thus, the movant is entitled to file the last pleading. Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter The court has found that surreplies usually are not that helpful in resolving pending matters, and it only permits filings beyond Local Civil Rule 7.1 in exceptional or extraordinary circumstances. Consequently, a party must not seek leave to file a surreply as a routine matter. Moreover, "[a]rguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).

Here, Cityscape has failed to persuade the court that this is an "exceptional or extraordinary" circumstance warranting a surreply. Cityscape correctly acknowledged that Plaintiff, in its reply in support of its motion for summary judgment, set forth new allegations accusing Cityscape of colluding with Keystone to have insurance coverage for the construction defects regarding Keystone's work building Cityscape Plaza. Specifically, Plaintiff alleges Cityscape and Keystone colluded to describe the construction of Cityscape Plaza as two separate projects—one project consisting of 24 units and the other 15 units—to fall within coverage. Plaintiff's attached summary judgment evidence, however, does not implicate Cityscape in Plaintiff's alleged fraud. The attachment contains no reference to Cityscape or an acknowledgement that Cityscape and Keystone agreed to the description of two projects. *Cf. Loya Ins. Co. v.* Avalos, 610 S.W.3d 878 Tex. 2020) (determining a court may consider extrinsic evidence when there is undisputed evidence an insured and a third party suing the insured colluded to make false representations of fact for purposes of securing insurance coverage through the

insurer's duty to defend and/or indemnify). As Cityscape, however, correctly argues, "Plaintiff's Reply is not the appropriate pleading in which to raise new arguments." (Doc. 29 ¶ 3); *see Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments."). The court, therefore, will not consider the new argument when making its ruling on Underwriter's Motion for Summary Judgment. Even if it were to consider the allegation, for reasons detailed below, the court's consideration of Plaintiff's "collusive fraud" argument will not prejudice Cityscape. Accordingly, the court **denies** Cityscape's Motion for Leave.

### III. Motion for Summary Judgment

Plaintiff seeks summary judgment as to its sole cause of action seeking declaration that it does not have a duty to defend or indemnify Keystone in the Underlying State Court Lawsuit because Cityscape's pleading alleges facts that fall within the exclusion paragraphs for the controlling insurance policies. In support of its position, Plaintiff relies on two paragraphs excluding coverage when a project: (i) consists of more than 25 units or (ii) exceeds 3 stories or 36 feet in height. Cityscape and Keystone[1] oppose the motion, arguing Plaintiff is required to defend and indemnify Keystone for its work on Cityscape Plaza under the eight-corners rule. Plaintiff further argues the court should consider extrinsic evidence under different exceptions to the eight-corners rule to find Plaintiff has no duty to defend and indemnify Keystone. Prior to addressing the parties' arguments, the court sets forth the applicable legal standard it will use in resolving the motion for summary judgment.

### A. Summary Judgment Legal Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

---

[1] In its filings, Keystone adopted by reference and incorporated the arguments and briefs filed by Cityscape in response to Underwriter's Motion for Summary Judgment.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

    Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions,

improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B. Summary Judgment Analysis

#### 1. *The Insurer's Duty to Defend and Indemnify*

The interpretation of an insurance policy is a question of law. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). State law rules of construction govern in a diversity case such as this one. *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995). "Texas law is clear that insurance policies are subject to the same rules of construction generally applicable to contracts." *Quorum Health Res. v. Maverick Cnty. Hosp.*, 308 F.3d 451, 468 (5th Cir.

2001) (citation omitted); *see also Burnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987) (same).

As the insured, Keystone "has the burden of establishing coverage under the terms of the policy." [2] *Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Under Texas law, "[t]he petition's allegations and the policy's language determine the insurer's duty to defend." *Farmers Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). Texas courts refer to this as the "complaint-allegation" rule or the "eight-corners" rule. *National Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Under the "eight-corners" rule, "[t]he court compares the four corners of the insurance policy with the four corners of the plaintiff's pleading to determine whether any claim alleged by the pleading is potentially within the policy coverage." *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). When reviewing the underlying pleadings, courts must focus on the factual allegations pled rather than on the legal theories alleged, and "give the allegations in the petition a liberal interpretation." *National Union Fire Ins. Co.*, 939 S.W.2d at 141. "The duty to defend is determined 'without reference to the truth or falsity of such allegations.'" *Guaranty Nat'l Ins. Co.*, 143 F.3d at 193 (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965)). Following the "eight-corners" rule, "[i]f a petition does not allege facts within the scope of coverage, an insurer is not legally obligated to defend a suit against its insured." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) (citation omitted). Courts resolve all doubts regarding a duty to defend in favor of the duty. *Id*.

Unlike the duty to defend, which is "strictly circumscribed by the eight-corners doctrine, it is well established that the facts actually established in the underlying suit control the duty to

---

[2] Because Keystone adopted by reference and incorporated the arguments and briefs filed by Cityscape, the court considers the briefs filed by Cityscape in its analysis.

indemnify." *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009) (internal quotation marks and citation omitted). Although in some instances it may be necessary to defer resolution of indemnity issues until after the underlying litigation is resolved, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend will likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Cnty. Mut. Ins. Co.*, 955 S.W.2d at 84 (Tex. 1997).

The insurer has the burden of proving the applicability of an exclusion on the policy. Guaranty *Nat'l Ins. Co.*, 143 F.3d at 193.3 "It is well established that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage." *Puckett v. United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). "This rule does not apply, however, when the term in question is susceptible of only one reasonable construction." *Id*. "When there is no ambiguity, it is the court's duty to give the words used their plain meaning." *Id*.

### a. The Live Petition in the Underlying State Court Lawsuit

At the time of filing Underwriter's Motion for Summary Judgment, Cityscape's Original Petition was the live pleading in the Underlying State Court Lawsuit. Shortly after Plaintiff filed its motion, however, Cityscape amended its original petition. Cityscape further amended its original petition for a second time during the pendency of Plaintiff's motion for summary judgment. Plaintiff did not file an amended or supplemental motion for summary judgment to address the controlling, live pleading in the Underlying State Court Lawsuit. As previously explained, however, *see supra* Sec. III.B.1, under the "eight-corners" rule, the court may look only to the allegations in the live pleading and the terms of the policy at issue to determine whether Underwriter has a duty to defend Keystone in the Underlying State Court Lawsuit. Thus, for

**Memorandum Opinion and Order – Page 8**

purposes of its analysis, the court considers Cityscape's most recent pleading—Cityscape's Second Amended Petition, the live pleading in the Underlying State Court Lawsuit. The court turns first to the relevant allegations in Cityscape's live pleading in the Underlying State Court Lawsuit.

Cityscape alleges that Keystone negligently designed and constructed Cityscape Plaza, resulting in various design and construction defects. Cityscape's Second Am. Pet. ¶ 37. More specifically, Cityscape alleges:

> Cityscape Plaza is a common interest community which was constructed as two separate projects. The first project, located at 1717 Annex Avenue in Dallas, Texas, is comprised of four buildings with 24 three-story condominiums. The second project, located at 1801 Annex Avenue in Dallas, Texas, is comprised of two buildings with 15 three-story condominiums. Cityscape Plaza also contains common elements such as driveways, sidewalks, and a dog park, among other improvements, that are used by tenants of both projects.

*Id.* ¶ 27.

> Cityscape further details the following alleged design and construction defects:
>
> a. Improper construction, design, and installation of shingle roofing resulting in water intrusion and damage to framing materials, other building components, insulation, and interior finishes such as drywall, base boards, and flooring, among other things.
>
> b. Improper construction, design, and installation of TPO roofing resulting in water intrusion and damage to framing materials, other building components, insulation, and interior finishes such as drywall, base boards, and flooring, among other things.
>
> c. Improper construction, design, and installation of the stucco and adhered stone cladding systems resulting in severe cracks and bulges, water intrusion and damage to framing materials, other building components, insulation, and interior finishes such as drywall, base boards, and flooring, among other things.
>
> d. Improper construction, design, and installation of the moisture management system such that the drainage of water is inhibited or around windows and doors resulting in water intrusion and damage to framing materials, other building components, insulation, and interior finishes among other things.
>
> e. Improper construction, design, and installation of roof deck and balcony membranes resulting in water intrusion and damage to water intrusion and

      damage to framing materials, other building components, insulation, and interior finishes such as drywall, base boards, and flooring, among other things.

   f.  Improper design, construction, and installation of fire-life safety measures resulting in deficient fire separation and fire-resistance, which poses a heightened risk of life-safety in Violation of the building codes, City of Dallas ordinances, and industry standards.

   g.  Improper design, construction, and installation of the structural garage headers resulting in overstressed framing members, excessive deflection of garage headers, cracks in the stone and/or stucco over the garage door, and water intrusion and damage to framing members and other building components.

   h.  Improper design, construction, and installation of interior stair Winder treads and handrails resulting in heightened trip hazards.

*Id.* ¶ 37.

    b.  *The Insurance Policy*

Underwriter insured Keystone from February 16, 2018, to February 16, 2020, through two Commercial General Liability insurance policies—BRT3A001920-00 and BRT3C000687-00 (collectively, the "Policy") for "sums that [Keystone] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Underwriter's Summ. J. App. at 0111. Underwriter points to two separate exclusion provisions in support of its argument that Cityscape's allegations in the Underlying State Court Lawsuit pleaded Keystone out of coverage. The relevant parts of both policies are identical and provide:

> **CONDOMINIUM, TOWNHOUSE OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT**
>
> . . . .
>
> This insurance does not apply to:
>
> **Condominium and Townhouse**
>
> "Bodily injury", "property damage" or "personal and advertising injury" however caused, arising, directly or indirectly, out of, or related to an insured's sub-contractor's operations, "your work", or "your product", that are incorporated into a condominium or townhouse project. **This exclusion applies only to projects**

> **that exceed 25 units**. This exclusion does not apply if "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

*Id*. at 0170 (emphasis added). The Policy also contain the following exclusion:

> **EXCLUSION - ROOFING LIMITATION**
>
> . . . .
>
> This insurance does not apply to:
>
> **Roofing Limitation**
>
> 1) "Bodily injury", "property damage" or "personal and advertising Injury" arising out of:
>
>    . . . .
>
>    b) Any job site where you are working, or have worked, on a **roof** of a building or structure, whether work is completed or not, **in excess of three (3) stories or thirty-six (36) feet in height**.

Underwriter's Summ. J. App. at 0179 (emphasis added).

### C. Discussion

#### 1. *Underwriter's Duty to Defend*

Having set forth the relevant allegations made by Cityscape in the Underlying State Court Lawsuit and the pertinent terms of the Policy, the court now addresses whether the allegations fall within the exclusion coverage provisions of the Policy. As already noted, if Cityscape alleges facts in its underlying pleading that may fall within the scope of coverage, Underwriter has a duty to defend; if, on the other hand, Cityscape only alleges facts excluded by the Policy, Underwriter has no duty to defend. *State Farm Lloyds v. Richards*, 966 F.3d 389, 393 (5th Cir. 2020).

With respect to the exclusion regarding projects exceeding 25 units, the court finds that Cityscape's second amended petition alleges facts that possibly implicate coverage under the Policy and does not allege facts that fall within the exclusion terms of coverage. In particular,

Cityscape alleges Cityscape Plaza is comprised of two projects located at separate locations. Cityscape's Second Am. Pet. ¶ 27. The first project is "comprised of four buildings with 24 three-story condominiums." *Id.* The second project "is comprised of two buildings with 15 three-story condominiums." *Id*. In relevant part, the Policy excludes coverage for condominium or townhouse projects that "exceed 25 units." Underwriter's Summ. J. App. at 0170. Underwriter argues that, taken together, Cityscape Plaza has 39 units, which clearly exceeds 25 units and therefore falls within the exclusion provision. Underwriter's Reply Summ J. at 8. When comparing Cityscape's allegations within the four corners of its second amended petition to the four corners of the Policy, Cityscape alleges sufficient facts to possibly implicate coverage under the Policy. Indeed, the second amended petition outlines two separate projects neither of which includes more than 25 units. Cityscape's Second Am. Pet. ¶ 27. Likewise, taking the plain language of the exclusion term within the four corners of the Policy, the exclusion only applies if a project has over 25 units. Because it is unclear if "project" as used in the Policy means the overall completed condominium or, instead, means each project taken individually, the court resolves the issue in favor of the duty to defend. *See State Farm Lloyds*, 966 F.3d at 393. In other words, the court interprets "project" as used in the Policy to mean each individual project; therefore, Cityscape's allegations that one project consisted of 25 units and the other consisted of 15 units falls outside of the exclusion provision within the Policy.

With respect to the exclusion regarding projects exceeding three stories or 36 feet in height, the court finds that Cityscape's second amended petition alleges facts that possibly implicate coverage under the Policy and does not allege facts that fall within the exclusion terms of coverage. As mentioned above, the factual allegations in the live petition state the projects consist of "three-story condominiums." Cityscape's Second Am. Pet. ¶ 27.

Because Cityscape has met its initial burden, the court next addresses Underwriter's burden to show that the plain language of a policy exclusion allows them to avoid coverage and their duty to defend. Underwriter urges the court to consider extrinsic evidence under two exceptions to avoid coverage. The first is a "very narrow" exception that allows a court to consider extrinsic evidence "where it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage [that] does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *State Farm Lloyds*, 966 F.3d at 394 (quotations omitted) (quoting *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 475 (5th Cir. 2009). The second exception was set forth in *Loya Insurance Company v. Avalos*, 610 S.W.3d 878 (Tex. 2020), and allows a court to consider extrinsic evidence when there is collusive fraud between the insured and the third-party suing the insured. Underwriter's argument to consider extrinsic evidence under either of the exceptions is unavailing.

First, the elements required to view extrinsic evidence under the "very narrow" exception are not met. Indeed, there is no question that Cityscape's live pleading potentially implicates coverage. Cityscape does not allege each project was more than 25 units nor does it allege the projects exceeded three-stories or 36 feet in height. Next, the extrinsic evidence Underwriter seeks the court to consider problematically overlap with the merits of the facts alleged in the live petition. The extrinsic evidence pointedly questions the number of units and the number of floors or height of each unit and impermissibly engages the truth or falsity of the facts alleged in the second amended petition.

Second, Underwriter's argument regarding the exception set forth in *Avalos* is improper because it was first raised in Underwriter's Reply and inapplicable because the conclusive, sworn, and undisputed evidence in *Avalos* is not present here. 610 S.W.3d 878. In *Avalos*, the Texas

Supreme Court reasoned, when confronted with undisputed sworn testimony that the insured and third-party agreed to purposefully misinform police officers and the insurer about who was driving a vehicle in a traffic accident in their effort to seek coverage, that "an insurer owes no duty to defend when there is conclusive evidence that groundless, false, or fraudulent claims against the insured have been manipulated by the insured's own hands in order to secure a defense and coverage where they would not otherwise exist." *Id.* at 882. Specifically, the insured in *Avalos* stated, under oath that she, her husband, and the third-party had an agreement to lie about who was driving the vehicle at the time of the traffic accident in an effort to obtain coverage for the car accident. *Id.* The extrinsic evidence Underwriter submits does not contain the same conclusive evidence of fraud as in *Avalos* and, therefore, is distinguishable. For the reasons mentioned above, Plaintiff has not met their burden and are not entitled to a declaratory judgment that it has no duty to defend.

### 2. *Underwriter's Duty to Indemnify*

Plaintiff contends there is no duty to indemnify Keystone because there is no duty to defend. Pls.' Mot. Summ. J. at 7. Cityscape responds by arguing Underwriter's arguments must fail because they are based on an outdated pleading and the duty to defend cannot be determined; thus, the duty to indemnify remains unresolved. Cityscape's Resp. at 5.

Under Texas law, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis in the original). The court herein determines that the identified coverage exclusions do not apply, and that Underwriter is not entitled to a declaratory judgment that it has no duty to defend. Because

the same reasons that negate the duty to defend also negate any possibility that Underwriter will ever have a duty to indemnify, Plaintiff's claim for a declaratory judgment regarding its duty to indemnify is not justiciable, and the court lacks subject matter jurisdiction over the claim.

### IV.     Court's *Sua Sponte* Motion

The court concluded that because the eight-corners rule implicates coverage in the Underlying State Court Lawsuit, and no exception to the rule allows the court to consider extrinsic evidence, Underwriter is not entitled to a declaratory judgment that it has no duty to defend. Granting summary judgment in favor of Underwriter on this claim, therefore, is inappropriate. Keystone and/or Cityscape, however, did not move for summary judgment on this claim. Therefore, the court *sua sponte* moves for summary judgment on Underwriter's declaratory judgment claim regarding its duty to defend. The court does not believe that there is any basis for Underwriter to recover, and therefore there is no reason to unnecessarily expend judicial resources trying this claim. Because the court raises this issue *sua sponte*, it is required under the applicable law to allow Underwriter at least ten days to respond to its motion and present any additional evidence it may have in opposition to summary judgment. *Lozano v. Ocwen Fed. Bank*, FSB, 489 F.3d 636, 641 (5th Cir. 2007) (citation omitted). Underwriter is therefore directed to file a response by 12:00 p.m. on April 6, 2022, and state why summary judgment should not be granted on this claim. Keystone and Cityscape are not to file a reply unless so ordered by the court.

### V.     Conclusion

For the reasons herein stated, the court **denies** Cityscape's Motion for Leave (Doc. 29). The court further **denies** Underwriter's Motion for Summary Judgment (Doc. 18) with respect to its claim for a declaratory judgment regarding its duty to defend and **directs** Underwriter to file a response to the court's *sua sponte* motion for summary judgement as herein directed by **12:00 p.m.**

**on April 6, 2022**. The court also **determines** that Underwriter's claim for a declaratory judgment regarding its duty to indemnify is not justiciable and that the court lacks subject matter jurisdiction over this claim. Accordingly, the court **dismisses without prejudice** Underwriter's claim for a declaratory judgment regarding its duty to indemnify.

    **It is so ordered** this 23rd day of March, 2022.

                                                    _____
                                                  Sam A. Lindsay
                                                  United States District Judge